Next case is PRIVACASH v. AMERICAN EXPRESS COMPANY, 2011-1027. Mr. Lurie. Good morning. May it please the Court. PRIVACASH brought this appeal because the District Court misconstrued two claim terms and as a result erroneously entered summary judgment of non-infringement. The PRIVACASH patent relates to open-loop gift cards, which are cards that can be bought at one retailer and used at any other retailer. The claims have four main steps. It's a method claim, but Claim 1 is the only independent claim that's at issue. There are four steps, distributing the cards, issuing the cards, contacting the provider of the cards to fund and activate them, and then transacting a purchase with the cards. So don't the cards have to have a non-personalized card, hold a name, and the American Express cards do not have one? The District Court did not make that finding. We contend, and the record— The Court noted it. The Court noted it. It said that the phrases such as a gift for you, celebrate, and so forth may not be names. But there was no finding of that, and therefore that's not an issue on appeal. We did raise it in our opening brief, and American Express said that's not an issue for appeal. It was not a decision made by the District Court. We agree with that. The reason is, for example, if you look at the card that we had when we first brought the lawsuit, it said a gift for you. It was embossed exactly where a name would be placed in the card. The fact that it uses the words a gift for you doesn't matter. For example, the patented card uses PRIVACASH.com. Now, that's not the name of a person. It wouldn't be recognized as the name of a person. Names like celebrate or something like that, it may be an adjective, but people's names are also adjectives, and we gave some examples in our brief of some famous celebrities who have named their children with adjectives. So just saying the word name is not the issue, and there's never been any real dispute about that. It may be when we go back. We may have to fight that battle when we go back. But that, I don't believe, is right for this Court to consider. On the non-personalized cardholder name issue, the problem we perceive is that the District Court added a use limitation in the transacting step where no use limitation exists. And that is improper under well-settled federal circuit law to add claim limitations from the specification where they don't exist. But in this case, it's even more so because the exact use limitation the Court added was removed from the claims before the claims issued. And so there's clear statement by the patent owner that they don't intend to have that limitation, and the Court's precedent reinforces that. And the case that we cited in our reply brief at page 6 is U.S. Teletronics. It's facts very similar to this case, where the District Court found that a particular limitation needed be in the claims. It relied on the prosecution history. There are two amendments made in the prosecution history where that claim limitation was added and relied on to distinguish prior art. But in the next amendment, that limitation was removed from the claims, and the claims were allowed.  Bearer instrument. They didn't have a bearer instrument because it was canceled. Yes. It's undisputed that the card is not a bearer instrument when it's distributed. It becomes a bearer instrument when it's funded and activated, and it ceases to be a bearer instrument when the card provider turns it off. Those are undisputed facts, and that's exactly what American Express does. Well, they're undisputed facts with respect to the accused products. They're, I think, not undisputed with respect to the scope of the patent. Actually, it is undisputed with respect to the scope of the patent, Your Honor. That was my understanding of the other side's position. Of course, they can correct me if I'm wrong, but I understood them to be saying that under the patent, the card was good until it expired. The patent did not provide a mechanism or contemplate that the card could be deactivated prior to its expiration, which is what their card does. Now, if I've misapprehended their position, then shame on me, but I don't think I have. You're exactly right. The nuance is— I'm exactly right with respect to their position. With respect to their position, yes, Your Honor. But the nuance is the card provider does all of that. It deactivates the card upon expiration. It deactivates the card if it's been reported lost or stolen. The customer cannot deactivate the card. They have to call American Express. They have to convince American Express that that was their card and it should be deactivated. And only American Express can deactivate the card. Nobody else. And it's American Express's decision to do that. Just like the expiration date is the card provider's decision as to when that card will no longer be valid. So through the life of a card, there's a time when it's not a bearer instrument, there's a time when it's a bearer instrument, and there's another time when it's not a bearer instrument again. Yeah, but it's important as to what those times are. I mean, the way I read your specification, and I'm looking at Column 3, Lines 56 through about 64, you've described a bearer card or a bearer instrument in a way that seems pretty close to definitional to me, without regard to what the UCC regards a bearer instrument as being for the moment. I'm focusing just on this language. You've described the card as being, until the expiration date, as good as cash, and if the consumer loses or misplaces the card, it can be used up to the limit available on the card by anyone in possession of the card. I.e., it's as if you've lost a $20 bill and you have no recourse. Now, the American Express-accused cards, you do have a recourse. You call American Express. True, it's American Express that has to deactivate the card, but nonetheless, there is recourse for the purchaser. It doesn't seem contemplated by your description of bearer instrument. We would say that's an extra step, Your Honor. The fact that they allow this additional way of turning off the card, first of all, this is clearly a preferred embodiment, because when you read this, it's not talking about all instances how you can turn off the card. You say each purchasing card is a bearer card, which means, and then you go ahead and describe a bearer card. That seems to be definitional rather than embodiment-type language. It would be if this was accurate, but when you read it, it says a bearer instrument, which means it is as good as cash. But the district court explained earlier in its opinion, and American Express agrees, that it's not truly as good as cash, because you can distribute this card without it being activated. It's not always as good as cash. Also, cash doesn't expire. Cash never expires. This purchase card may not expire either. The fact that there is an expiration date is a possibility. It's described as a possibility, but it's not described as the only way to do this. It's not described as the only way to sell cards. For example, they could have no expiration date. The fact that American Express, and also American Express does have an expiration date on their cards, so if a card is lost and if it's not reported stolen, it is exactly what this paragraph describes. It is usable by anybody who has it until the expiration date, and then it's not again. The fact that they provide an additional mechanism to turn off the card shouldn't change that. And the example we gave, of course, is the check made out to cash, which until either the check expires, there's usually an expiration date for some of these things, but until it expires, it's usable by anybody. But it can still be deactivated. The fact that this patent doesn't expressly describe calling the card provider and saying, you know, stop payment on my card, shouldn't change the fact that the card, the term bearer instrument in this patent contemplates a beginning of life and an end of life. And how that beginning of life and end of life occurs shouldn't change the definition of bearer instrument. So that's why we say it's a bearer instrument when it's funded and activated, and during that time it can be used up to the limit of the card. But once it's no longer funded and activated, meaning that American Express has turned it off for whatever reason, because it expired or because somebody called and said, turn off my card, that shouldn't change the nature of the bearer instrument while it's still funded and activated. Because while it's still funded and activated, anyone can use it, and American Express witnesses admitted that. I don't know if the Court has any other questions on either of the terms. We will save the remainder of your time. Thank you. Mr. Arminio. Thank you, Your Honor. May it please the Court. The district court here properly found two independent bases for non-infringement and granted summary judgment. First, it found there was not a non-personalized cardholder name, and they found the American Express purchase card was not a bearer instrument. Do you think there was a finding when the Court said, we note, I note? I think that was dicta regarding name. I think the Court almost took a little bit of a Shakespearean turn in, what is a name? And we never argued that the word name alone was enough to trigger summary judgment of non-infringement. We looked at, overall, non-personalized cardholder name. I agree that Patent and Specification cites, as an example, private cash as a potential name, and it really doesn't limit it. It doesn't have to be John Smith or Mary Doe to be a name. So we didn't look at the Court as ruling on just the word name and what is a name and that we don't have a name on the American Express card. Rather, we found that the Court defined non-personalized cardholder name and found we didn't have one of those. In the original application, as filed in 1999, there was no term non-personalized cardholder name. There was a final rejection over prior art. There was prior art to a First USA Kennel Club Visa, where people could have a Visa card and they could put their pet's name on it instead of their own. So that was a name, the pet's name, that didn't refer to the purchaser. You know, a human being would actually go and make the purchase. And what counsel for private cash argued was, well, that changes it. That makes it different. Our requirement here is that there be a non-personalized cardholder name, not just embossed on the card, but that's actually used in the transaction. And the PTO responded to that and said, well, that's fine what you're saying, but the specification doesn't say that and the claims don't say that. So what happened was there was an interview and the interview summary is in the record. This is A-146? The remarks of the examiner? So if we look at A-146, these are, that is the remarks of the attorney submitting the amendment. I have in my joint appendix, Your Honor, the interview summary is A-134 through 136. And I have the office action that precipitated that interview as A-2334 through A-2341. So the patent office said, I understand you're saying this non-personalized cardholder name has to be used, but it doesn't say that in the specification or the claims. If you amend those to make that requirement clear to aid, to facilitate claim construction, you may overcome the prior art. So Private Cash's counsel amended the specification. They also amended the claims to add the word and the requirement of use of a non-personalized cardholder name. In the briefing, Private Cash argues about this transacting step, that it got changed, it got changed again, and it got changed back a third time. What I would suggest is the one thing to properly focus on in this case is that in 1999, when they filed their initial application, there was no requirement for a non-personalized cardholder name. Well, to cut it down to the elements that seem to me to be most critical here, they added in that requirement in both the spec and the claim, and then they later took it out of the claim. What is one to make of that, with the acquiescence, seemingly, of the examiner? So unlike the usual prosecution history disclaimer situation or, for that matter, even simply a modification of the claim demonstrating the abandonment of claimed subject matter, this sounds as if they had second thoughts about abandoning a portion of what they had claimed. They went back, and the examiner was just fine with it. What I would say, Your Honor, is they certainly did change and change back language in the transacting step of the claim. Right. What they didn't ever change, once they added it in in 2005, was the addition of the requirement that the card have a non-personalized cardholder name. That didn't exist in the initial application in 1999. They added it by amendment in 2005. They amended the specification to say what that means, non-personalized cardholder name. And that word, that phrase, never came out of the claims again. Well, let me make sure I understand exactly what your argument is then. Are you saying that – are you not arguing that that non-personalized cardholder name has to be used in the transaction as it would have been under the prior version of the specification and the claim? What I'm saying, Your Honor, is that non-personalized cardholder name, that word that was put in in 2005 and stayed in the rest of the way, has to be used the way the applicant defined it when they amended the specification in 2005. Which is to be used in the transaction. Correct. Well, then you are making the argument that the change they made has to be in the claim, has to be disregarded, because that's what was taken out. What they had in the claim was a little bit different, Your Honor. At one point, they had the non-personalized cardholder name going between the retailer and the card provider. Here, that would be American Express. And what they later admitted is that can't happen, that's an impossibility, because the system where we all know we go swipe the credit card, that system does not provide for your name, either your real name or a non-personalized name, to go between the retailer and the card provider, like American Express. That system is very limited to four pieces of information. The card number, the expiration date, the security code on the card, which is that little four-digit number above the embossed number, and the amount of the transaction. So at first they said the name has got to go between the retailer and the card provider, but that's impossible. They admit that it was impossible in their reply brief at page five, so they took that out. Now, what's left in is that this card has to have a non-personalized cardholder name, and that's got to mean something more than Fido, right, or Rover, or something else on the patent, as in the Kennel Club First USA Prior Art. And we also know from the claim itself, if we look at the remainder of the claim itself, claim one in the patent, the remainder of the claim says, wherein the purchase card does not include information identifying the specific prospective cardholder. So it already has the fact that the card can't say anything about me or you or whomever the purchaser is, so this addition of non-personalized cardholder name, it has to be something other than this doesn't say who you are. It's got to provide something. It's got to relate to the transaction here, right? We've got a claimed method for transacting a purchase, so it's got to be used. And how it's got to be used, they said right in the specification when they amended it, it's at page A142, the account number, cardholder name, and expiration date are then used by the retailer's application to complete the purchase transaction with the consumer in a manner known in the art. And this is another concession in the reply brief, page 3, that this non-personalized cardholder name is flowing between the retailer and the consumer. If the retailer wants more information about you, for example, for a mailing list, this is where the non-personalized cardholder name comes into play. I'm sorry, if the retailer needs more information, go ahead. Correct. If the retailer wants to get more information, they don't need it to complete the transaction with the card provider, but if they want it for their own purposes, for example, generating marketing or mailing lists, they sometimes ask for your name. And what the claimed invention was, was to say when they do that, to preserve your anonymity, tell them the non-personalized cardholder name. So I would say William Shakespeare. If that was printed on your card. For whatever good that does the retailer who wants to know who I am in order to make sure it's not a phony card. Okay, but I can't say Fido? What you could say, sure you could. But I have to say it? Correct. Or at least it has to be contemplated that I say it? A, you would have to say it for there to be a direct infringement, since this is a method claim, and B, American Express would have to intend for you or instruct you to do it, since this is a case where they're alleging indirect infringement, that we're aiding, abetting, or inducing infringement by others, since American Express isn't the one going out there buying things. And we don't tell anybody to go, and when you make a purchase, type in celebrate, or indulge, or a gift for you, or any of these other phrases that they're suggesting. We never tell people to do that. And there's no proof in the record that anybody did do that other than the expert on their behalf, and that runs contrary to this Court's ACCO case, ACCO Brand's case. There has to be some showing of infringement, direct infringement, by somebody other than the plaintiff's expert, that they show a real-world infringement. Here there was none, and there's certainly here no intention that people use these words, celebrate or indulge, in the transaction. So there's no non-personalized cardholder name as properly interpreted. And that, I would suggest to the Court, is the right result. Would you address the bearer instrument issue, please? Yes, Your Honor. I'm happy to. When we look at bearer instrument, the district court properly construed bearer instrument for three reasons. It used the plain and ordinary meaning of bearer instrument. It looked at the remaining limitations of the claim. And it looked at the language and the specification that I believe Judge Bryson already pointed to this morning in the specification of the patent. So if we look at each of those, counsel talks a lot about, well, what is required to turn the card on and what is required to turn the card off? Is there an expiration date? I'd make two points on that. Number one, activating the card and sending an expiration date as part of a transaction, there are already claim limitations. If there are already claim limitations, if counsel is saying that's what bearer instrument means, that and only that, turning it on and turning it off, the word becomes superfluous. And we can't have that. That's one indication of why the proposed construction that private cash has offered is incorrect. Number two, it's a bearer instrument, and we look in the record at the definition of it. It's at A-909, but it has to be a negotiable instrument. And something is not negotiable until it's activated, and it's not negotiable after it's expired. There was a mention of cash. Cash isn't negotiable once somebody tears it up or burns it. It doesn't have an expiration date printed on the front of it, for sure, but it has to be printed and issued by the U.S. government, so it has to be turned on. And it's cash, and it's negotiable until it either is taken out of circulation or otherwise destroyed. It's negotiable during that period of time. So I would respectfully submit that the turning it on and turning it off through normal expiration is setting the period during which it's negotiable. Yes, please, John. Go ahead. And I was going to say, separate to that is during that lifetime, what can't happen with a bearer instrument is that there be an additional requirement to prove title above and beyond your mere possession, having it in your hand. And in this case, what distinguishes the American Express card is if someone takes my American Express gift card, I can call up and say I've either lost or my card has been stolen, and they will turn it off, and then that person who has inappropriately gained possession of the card, when they go to wherever they want to use to suspend the card, it will be turned off and they can't use it. So possession will not be enough. Possession will not show title to the card. Isn't that true, though, of a check that's made out of cash? If I go down to the bank, I ask for a check made out of cash, foolishly, it probably wouldn't be for $10,000. Let's say it's $1,000. And as I walk out of the bank, somebody holds me up, grabs the check, and runs off with it. I turn around and go back in the bank, and I say stop payment on that check. The check ceases to be an effective instrument, a negotiable instrument, even though it's a bearer instrument as defined by the UCC, correct? What I would say, Your Honor, is to me that's classic extrinsic evidence. Well, wait. Let's just – the UCC, I think, deals with this issue, right? It talks about checks and checks made out of cash. I can't speak to whether a check made out of cash is or is not a bearer instrument. Under the definition of bearer instrument in this patent, with the specification language, as Your Honor pointed out. That's the question, it really is. Setting aside, however, this language in Column 3 of this patent, as a legal matter, isn't a check made out of cash regarded as a bearer instrument, notwithstanding that it can be canceled? I don't know that there's a definition that's adopted everywhere for all purposes. Counsel cited to the UCC, not below at all, first time on this level. Well, but it's a legal question, I would think. To date, I have to say, I haven't seen how what a check is or is not bears on the specification here. We've got the plain and ordinary meaning in the definition. We provided A-909. We've got the specification at 839 that says if the patented card is dropped or lost, it can be used by anybody up to the funds available. And we've also got the activation requirement in the claim and the expiration requirement already in the claim. So we know bearer instrument in this claim can't mean that. What is this page 909 from, by the way? We just all have one piece of paper. And I apologize. Counsel and I were probably a little aggressive in paring down the joint appendix. It's from a dictionary. And we can provide the Court with the cover page and the copyright date of the dictionary if the Court would like that as part of the record. It's a contemporaneous dictionary definition of financial terms. And this was cited to the district court and shows, again, ordinary meaning of bearer instrument, negotiable instrument, payable on demand to the individual who holds the instrument. And here's the important part. Title passes by delivery without endorsement. The title never passes to the person who picks up my American Express card because the card can be turned off and they can't use it. Well, title. I mean, title to my wallet doesn't pass when somebody steals my wallet. But those $20 bills, if I have any, in the wallet are still bearer instruments. So I'm not sure title in this setting is really all that important. The thing with the $20 bills is that person who inappropriately gets your $20 bill, maybe you left it on the table, they can't be stopped from using it in a transaction. Nobody can turn it off. They can go and buy whatever they want to buy with that $20 and there's no mechanism to turn it off. It's a true bearer instrument. Like Hans Gruber in Die Hard is probably the most common bearer instrument. He had the bearer bonds. Why did he want to steal them? Because once he had them, even though he was a criminal and everybody knew he was a criminal, he could go spend them anywhere he wanted. What we have here with the American Express gift card is if you get it inappropriately, either you steal it or you just pick it up off the street, but it's not yours, it can be turned off on you and you can't go ahead and use it. So your mere possession of the card does not entitle you to use it, so it's not a bearer instrument under the proper construction of that term. But in this patent, it's clear that this card can have an expiration date. So in that sense, when the patent talks about, well, it's the same as cash, it's not exactly the same as cash because cash doesn't have an expiration date. I have to agree with that, Your Honor, and the district court agreed with that, too. So then what in the patent forecloses the idea that it can still be a bearer instrument even if somebody could cancel it? Because we have here the language in column 3, line 60, where it says, quote, should the consumer lose or misplace the purchasing card 40, it may be used up to the limit available on the card by anyone in possession of the card. In this way, the purchasing card provides a means for preserving the anonymity of the purchaser in future purchases made over the Internet. Both of those sentences we know are already modified by the fact that it's, you know, subject to its being used prior to its expiration. So there are already some modifiers to those expressions. You can't read those expressions and say, well, it's going to be a bearer instrument for all times, for all purposes. I agree, Your Honor, that a bearer instrument is a negotiable instrument, and so it's got a beginning and an end. And here we have an explicit end, expiration date. It's part of the data that has to go through with a card transaction. It's also, this is an American Express gift card, so I can't use it at a place that doesn't accept American Express gift cards. There are limitations of that nature, but when we look in the context of this patent, that's talking about purchase cards and just purchase cards, when we look in the context of this patent, this was saying you can't turn it off once it's on until the funds have been used, until it expires. And it says why. In this way, the purchasing card provides a means for preserving the anonymity of the purchaser, because if it gave you a means to turn it off, it would have a means of identifying you. Thank you, Mr. Arminio. Thank you, Your Honor. We'll hear from Mr. Lurie. Thank you. Let me start with the bearer instrument issue. Importantly, the claims define how a card becomes a bearer instrument, but do not define how the card ceases to be a bearer instrument. I think that's an important point here. They say that the card, the claims say the card is funded and activated, which is how it becomes a bearer instrument. But what happens in the transacting step is that there's a check made to make sure that the card is not expired and that the account number is a valid account number. So it doesn't matter how the card becomes deactivated at the end, because the claims don't cover that. You'd have to insert a new claim limitation in order to cover what American Express is asking for, which is that if we provide this additional option of canceling it by calling up, then the card is no longer a bearer instrument under the patent's definition. I don't think that's appropriate because that is really adding an additional step that's not in the claims. The claims do talk about sending the card number and sending the expiration date in the transacting step, but that's just a check, and that's when a determination is made whether the card remains a bearer instrument or not. So I think that's an important factor here. Just one correction, I think it's a minor point, but we did raise the check example below, and I believe we cited page 42 of our opening brief. That's a detail, I believe. In the other point response, the Appellees' Council argued that the bearer instrument becomes superfluous without this. I don't think that's true because the whole point of the bearer instrument concept is that anybody who has possession of this card can use it, meaning, in the American Express case, that the person who buys it can use it, they can give it as a gift, they can drop it on the ground and somebody else can pick it up and use it up to its expiration date or up to any time American Express turns it off. So I don't think it becomes superfluous because you need that statement in order to create that ability to give the card away as a gift card, for example. Let me turn now to the non-personalized cardholder name, if I could, just briefly. It's important to understand that the claim focus changed from 2005, when the use limitation was added and the specification was amended, and 2006 and then later in 2008 when the claim actually was cancelled, Claim 15, which was added in 2005, was cancelled, and a new claim was added in 2006, which had a very different focus. The focus of the claim in 2005 was about the relationship between the cardholder and the retailer. That was the focus then. In 2006, the focus of Claim 22, the new claim, was between the cardholder and the purchase card provider, a different relationship. So the claim limitation that American Express seeks to add, the use limitation, which focuses on the relationship between the card provider and the card and the retailer, is no longer relevant to Claim 22, which is the reason it was removed from Claim 22, and therefore it doesn't apply for that reason as well. Not only because it was taken out, but because of that. The last point I'd make is that the non-personalized cardholder name in the distributing step must be selected by the card provider. That's an additional step, and also printed on the card. So that's an actual step of the claim that's required. It's not enough that there be a cardholder name. It has to be selected by the card provider. So it does have something more than a static value, which is what the court said. Do you think, in light of the substantial change that was made, as you described it in 2006, that this patent priority date would be 2006? No, I think the focus of the claim changed, but the specification supported all of that. The specification talked about all the relationships, but the focus of the claim in 2005 was about a relationship between the card provider and the cardholder. If you look in our brief, and I think it's—I don't—quickly. It's figure 3, I believe. Yes, figure 3. It shows all the relationships. Now, there was a change in the specification made in 2005. There was. Right. So would that be the priority date? I don't believe so, Your Honor. That change, the examiner agreed. We stated that this was not new matter. The examiner agreed with that. It was only clarifying what happened between the card provider and the retailer, and it was already, in our view, it was already all in the specification. It just needed to be said more clearly. So I don't believe, and American Express has not yet argued, maybe they will below if we go back, that that limits the effective priority date of the claims. But especially because that limitation is no longer in the claims, I don't think it would limit the priority date of these claims anyway, even if somehow you could say it would. If the Court has nothing further, we would ask that the Court correct the claim construction and then remand. Thank you, Counsel. We will take the case under advisement.